UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE EDDIE ANDERSON, II,

      Petitioner,                          Civil Action No.
                                            2:19-CV-12546

                                            HONORABLE MARK A. GOLDSMITH
v.                                      UNITED STATES DISTRICT JUDGE

CONNIE HORTON,

      Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Willie Eddie Anderson, II, ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his convictions for assault with intent to rob while armed, Mich. Comp. Laws § 750.89; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); felon in possession of a firearm, Mich. Comp. Laws § 750.224f; carrying a concealed weapon with unlawful intent, Mich. Comp. Laws § 750.226; resisting and opposing a police officer, Mich. Comp. Laws § 750.81d(1); two counts of possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b; and being a second felony habitual offender, Mich. Comp. Laws § 769.10.  For the reasons stated below, the petition for writ of habeas corpus is denied.

### I. BACKGROUND

Petitioner was convicted following a jury trial in the Jackson County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1); see also Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> On Saturday, October 12, 2013, while lying on her bed, Shavonie Baltimore heard a "big boom." She got out of bed and looked out a window. She saw a tan Buick parked in her driveway. Baltimore walked down the stairs and encountered a man she did not know. The man pointed a gun at Baltimore and asked her where she kept her money. When Baltimore said that she did not have any money, the man walked past her towards the back of the house. Baltimore then ran out the front door and to a neighbor's house, where the neighbor called 911.
>
> Jackson Police Department Officer Charles Brant, who responded to the 911 call, sent a radio message asking other law enforcement personnel to be on the lookout for a tan Buick. Jackson County Deputy Jeremy Barnett saw a car that matched the description and gave chase. The Buick stopped at a driveway on Chittock Avenue where a man got out of the passenger door and ran. The driver sped off in the Buick, and Deputy Barnett continued pursuit. The Buick stopped on Maple Avenue. The driver got out and ran with a firearm in tow. Deputy Barnett and Jackson Police Officer Bradley Elston eventually apprehended the driver of the vehicle, Josephus Anderson, who was defendant's brother. Deputy Barnett located a rifle within 10 to 15 feet of the location where he and Officer Elston apprehended Josephus.
>
> At trial, Baltimore testified that she was certain defendant was the man she encountered in her house. Josephus testified that he drove defendant to Baltimore's house and that he saw defendant enter the house.[1] At the close of trial, the jury convicted defendant of the above-mentioned crimes.

People v. Anderson, No. 331466, 2017 WL 4699734, at * 1 (Mich. Ct. App. Oct. 19, 2017) (footnote in the original).

Petitioner's conviction was affirmed by the Michigan Court of Appeals. Id., lv. den., 927 N.W.2d 708, reconsideration den., 933 N.W.2d 266 (2019).

---

[1] Josephus had been convicted of assault with intent to rob while armed, first-degree home invasion, two counts of felony-firearm, and resisting or obstructing a police officer. He received sentences of 51 to 240 months for the assault with intent to rob while armed conviction, 81 to 240 months for the home invasion conviction, two years for the felony-firearm convictions, and 330 days for the resisting or obstructing conviction. Josephus testified pursuant to an agreement in which he would be released from prison after serving only 28 months.

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Ineffective assistance of counsel in not investigating a witness (Eric Wilson).

II. Perjured testimony at trial (Josephus Anderson).

III. Ineffective assistance in not objecting to in-court identification (Laura Linden).

IV. Improper expert testimony (Stan Brue).

V. Ineffective assistance in not obtaining an GPS tracking expert.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if

the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  Williams v. Taylor, 529 U.S. 362, 405-406 (2000).  An "unreasonable

application" occurs when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  Id. at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (<u>citing</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>. at 102 (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)).   Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. <u>Id.</u> To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 103.

### III. DISCUSSION

**A.  The Ineffective Assistance of Counsel Claims (Claims 1, 3, 4, and 5).**

Petitioner in his first, third, fourth, and fifth claims argues he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).  <u>Strickland</u> established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  <u>Strickland</u>, 466 U.S. at 687.

Petitioner, in his first claim, alleges that trial counsel was ineffective for failing to investigate Eric Wilson as a possible defense witness.  Petitioner claims that Eric Wilson would have testified that he lived on Chittock Avenue at the time of the robbery and home invasion and saw a man jump out of a tan Buick in a driveway.  Wilson was certain this individual was not petitioner.

Petitioner's appellate attorney filed a motion for a new trial and for an evidentiary hearing, which was conducted on August 10, 2016.  Petitioner's attorney, Alfred Brandt testified that petitioner never told him about Eric Wilson, nor did he ask Brandt to pick up a packet of information from his mother.  Petitioner's prior attorney, David Clark, never mentioned Eric Wilson to Brandt either.  8/10/16 Evidentiary Hrg. Tr. at PageID.1008-1009, 1011 (Dkt. 9-18).  Eric Wilson testified at the hearing, but he admitted that he only saw the person who got out of the car for a few seconds; he admitted that he didn't get a good look at the driver.  Id. at PageID.1026.  Petitioner's mother, Rhonda Anderson, indicated that petitioner called her during his trial and asked her to contact Mr. Wilson.  Ms. Anderson spoke with Mr. Wilson, who informed her that the person who exited the vehicle was not her son.  Id. at PageID.1030-1031.  Ms. Wilson, however, admitted that she spoke with the prosecutor several times during this case but never told him that there was a witness who would say that petitioner was not the person who exited the vehicle.  Id. at PageID.1032-1033.  Ms. Anderson also admitted that she had wanted petitioner to accept a plea bargain.  Id. at PageID.1034-1035.  Petitioner testified at the hearing that he asked his attorney, Alfred Brandt, to pick up a packet of information from his mother, which included information about Eric Wilson.  Petitioner admitted that he did not tell his first attorney, David Clark, about Eric Wilson, although he did inform him that his mother had a packet of information.  Id. at PageID.1045.  Petitioner admitted he never asked his mother to give the packet of

information to Mr. Brandt.  Id. at PageID. 1048.  Petitioner conceded that the first time he told his

mother about Eric Wilson was one year and four months after his arrest.  Id. at PageID. 1051-1052.

The trial judge rejected petitioner's ineffective assistance of counsel claim in the following

passage:

> It makes no sense to me why, if I had a witness that could say that I was not the one
> exiting the vehicle that it would take so long to—or would not be adamant in
> bringing that information forward.
>
> I see no reason why Mr. Brandt would—if he had a witness that could actually say
> that it was not Mr. Anderson exiting the car, that why he would wait so long to ask
> his mom to bring this information forward.  Or, if his attorney wasn't picking it up
> why she wouldn't just drop it off in his office.  Now granted, she was told they were
> gonna pick it up, but to me, it just does not add up.  I don't think Mr. Anderson's
> being truthful and your motion is denied.

Id. at 57-58, PageID. 1061-1062.

The motion for a new trial was denied.  People v Anderson, No. 2014004531, 2017 WL

5997898, at * 1 (Mich. Cir. Ct. May 23, 2017).

The Michigan Court of Appeals rejected petitioner's claim:

> At an evidentiary hearing, Wilson testified that he lived on Chittock Avenue at the
> time of the home invasion and that he saw a man jump out of a tan Buick after the
> car pulled into a driveway.  Wilson was certain that the man was not defendant. He
> believed that the man was a man named Ray Page.  Defendant testified that he asked
> defense counsel to speak with Wilson and to pick up a packet of information from
> his mother, which included a letter written by Wilson.  The trial court did not find
> defendant's testimony in this regard credible.  This credibility determination was
> not clearly erroneous.  Contrary to defendant's testimony, defense counsel testified
> that defendant never asked him to investigate Wilson or to pick up a packet of
> information.   Additionally, although defendant testified that he learned from
> Wilson in 2013 that Wilson had seen the car chase, defendant acknowledged that
> he never told David Clark, who represented defendant for more than eight months
> before defense counsel represented him, about Wilson and that he waited until more
> than a year after he was arrested to tell his mother about Wilson.  Defendant's
> mother testified that defendant first told her about Wilson during trial.
>
> This Court must give due regard to the special opportunity of the trial court to judge
> the credibility of the witnesses before it.  Giving due regard to the trial court's
> opportunity to judge the credibility of defendant and defense counsel, we are not

6

left with a definite and firm conviction that the trial court made a mistake by finding that defendant was not credible.  Based on the trial court's credibility determination, the trial court did not err by rejecting defendant's claim that defense counsel was ineffective for failing to investigate Wilson.  By not asking defense counsel to investigate Wilson or to pick up a packet of information from defendant's mother, defendant did not make a good-faith effort to avail himself of Wilson's testimony.

People v. Anderson, 2017 WL 4699734, at * 5.

A trial attorney is not ineffective for failing to call witnesses of whom he or she is unaware.

See Ballinger v. Prelesnik, 709 F.3d 558, 563 (6th Cir. 2013); See also Bigelow v. Williams, 367

F.3d 562, 571 (6th Cir. 2004).  "Counsel cannot be expected to interview unknown witnesses."

Ballinger, 709 F. 3d at 563.  In the absence of any credible evidence that trial counsel was informed

about Mr. Wilson by the petitioner prior to trial, the state court's rejection of this portion of the

petitioner's ineffective assistance of counsel claim was not unreasonable.  Id.

In the present case, an evidentiary hearing was conducted on petitioner's ineffective

assistance of counsel claim.  The judge, in rejecting the claim, specifically found that petitioner's

story that he told his attorney about Mr. Wilson was not credible.

While the ultimate question of ineffective assistance of counsel is a mixed question of law

and fact, the factual findings of state courts underlying such an analysis are accorded the

presumption of correctness in federal habeas proceedings.  See Abdur'Rahman v. Bell, 226 F.3d

696, 702 (6th Cir. 2000).  This is particularly so where credibility determinations are involved.

See, e.g., Mix v. Robinson, 64 F. App'x 952, 956 (6th Cir. 2003).  The presumption of correctness

also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution

of conflicting evidence."  McPherson v. Woods, 506 F. App'x 379, 387 (6th Cir. 2012).  In order

to overturn this presumption of correctness, a habeas petitioner must either show that "the record

as a whole did not support the factual determination" or must prove "by clear and convincing

evidence that the factual determination was erroneous."  See Poole v. Perini, 659 F.2d 730, 736 (6th Cir. 1981).

In rejecting petitioner's ineffective assistance of counsel claim, both the trial court and the Michigan Court of Appeals chose to credit Mr. Brandt's testimony at the evidentiary hearing that he had never been informed by petitioner or petitioner's prior attorney about Mr. Wilson or a packet of information.  The trial court judge rejected petitioner's testimony that he had informed his counsel about Mr. Wilson.  Petitioner presented no evidence to this Court to rebut the trial court's credibility finding that petitioner never informed Mr. Brandt, his trial counsel, about Mr. Wilson.  Although petitioner argues that his statement to the police should have put Mr. Brandt on notice to investigate any potential witnesses, petitioner in this statement merely told the detective that his mother had paperwork that would provide him with an alibi, but petitioner refused to provide any details of his alibi to the detective, nor did he mention the names of any witnesses to the detective.  Pet. at PageID.74 (Dkt. 1).

"In he-said, he-said cases like this one" involving an allegation of ineffective assistance of counsel, a "factfinder does not clearly err in picking one 'he' over the other so long as there is support for each account."  Christopher v. United States, 831 F.3d 737, 739 (6th Cir. 2016).  There was support for Mr. Brandt's testimony that he was never informed about the existence of Mr. Wilson.  The trial judge was in the best position to judge the credibility of the various witnesses and chose to credit Mr. Brandt's account.  Id.  Petitioner is not entitled to relief on his first claim.

Petitioner, in his third claim, alleges that trial counsel was ineffective for failing to move to suppress the in-court identification of petitioner by Laura Linden, claiming that it was unduly suggestive because Ms. Linden identified petitioner for the first time in court at his trial.  Ms. Linden was the victim's neighbor who testified at trial that she was 95% sure that petitioner was

the man she saw in the victim's driveway on the day of the robbery and home invasion.  Ms. Linden never participated in any pre-trial identification procedure and hence identified petitioner for the first time at trial.  Petitioner claims that Ms. Linden's in-court identification was unduly suggestive, and counsel was ineffective for failing to move to suppress it on this basis.

The Michigan Court of Appeals rejected petitioner's claim as follows:

> Defendant argues that defense counsel was ineffective for failing to object to Laura Linden's in-court identification of him.  According to defendant, based on the eight factors set forth in <u>People v. Gray</u>, 457 Mich. 107, 116; 577 N.W.2d 92 (1998), Linden's in-court identification was inadmissible.  However, these factors are applicable to determine whether an independent basis exists for an in-court identification made after an impermissibly suggestive out-of-court identification. <u>Id.</u> at 115. There is no indication on the record that Linden was ever involved in a pretrial identification procedure.  Therefore, the <u>Gray</u> factors are inapplicable here. Rather, the weight and credibility of the witness's testimony identifying defendant in court was for the trier of fact to assess.  <u>People v. Barclay</u>, 208 Mich. App. 670, 676; 528 N.W.2d 842 (1995).

<u>People v. Anderson</u>, 2017 WL 4699734, at * 4.

The Michigan Court of Appeals concluded that counsel was not ineffective to move to suppress Ms. Linden's in-court identification, because under Michigan law, it would be futile to do so. <u>Id.</u>

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures.  <u>Moore v. Illinois</u>, 434 U.S. 220, 227 (1977).  To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification.  <u>Kado v. Adams</u>, 971 F.Supp. 1143, 1147-1148 (E.D. Mich. 1997) (citing <u>Neil v. Biggers</u>, 409 U.S. 188, 196-197 (1972)).  Five factors should be considered in determining the reliability of identification evidence:

1. The witness's opportunity to view the criminal at the time of the crime;

2. The witness's degree of attention at the time of the crime;

3. The accuracy of the witness's prior description of the defendant;

4. The witness's level of certainty when identifying the suspect at the confrontation; and,

5. The length of time that has elapsed between the time and the confrontation.

Neil, 409 U.S. at 199-200.

If a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification.  See United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992).

Petitioner failed to show that Ms. Linden's in-court identification could have been suppressed for being unduly suggestive.  Although the Sixth Circuit in Hill held that the Neil analysis for suggestive identifications applies to identifications made for the first time at trial, see Hill, 967 F. 2d at 232, Sixth Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court," and thus "cannot form the basis for habeas relief under [the] AEDPA."  Parker v. Matthews, 567 U.S. 37, 48–49 (2012).  This Court notes that "the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification."  Cameron v. Birkett, 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004).  Moreover, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."  Perry v. New Hampshire, 565 U.S. 228, 248 (2012).  Admission of Ms. Linden's in-court testimony against petitioner would not be grounds for habeas relief, because there are no Supreme Court cases which

10

have extended the protections of <u>Neil</u> and its progeny to cases where the eyewitness first identifies

the petitioner in court.  <u>See</u> <u>Luckett v. Adams</u>, 200 F. App'x 703, 704 (9th Cir. 2006).  Indeed,

"[n]one of these cases has set any guidelines for in-court identification procedures nor indicated

that in-court identification must be made in a way that is not suggestive." <u>Id.</u> (citing <u>United States</u>

<u>v. Domina</u>, 784 F.2d 1361, 1368 (9th Cir. 1986)).  "The Supreme Court has not extended its

exclusionary rule to in-court identification procedures that are suggestive because of the trial

setting." <u>Domina</u>, 784 F. 2d at 1369.  Other courts have reached similar conclusions.  <u>See</u> <u>Gunnels</u>

<u>v. Cartledge</u>, 669 F. App'x 165, 165-166 (4th Cir. 2016) (denying a certificate of appealability on

the petitioner's claim that the "district court erred in ruling that a victim's identification of [the

petitioner] was admissible" where the petitioner claimed that the district court should have

weighed the factors in <u>Neil</u> "in determining whether the victim's in-court identification of [the

petitioner] was admissible," stating, "[T]he Supreme Court of South Carolina has 'conclude[d], as

the majority of courts have, that <u>Neil v. Biggers</u> does not apply to in-court identifications and that

the remedy for any alleged suggestiveness of an in-court identification is cross-examination and

argument.'  <u>State v. Lewis</u>, 363 S.C. 37, 609 S.E.2d 515, 518 (2005).  This refusal to extend [<u>Neil</u>

<u>v. Biggers</u>] to in-court identifications forecloses [the petitioner's] argument on federal habeas

review that <u>Neil</u> applies to his case.").

Even the Sixth Circuit has seemed to back off from its holding in <u>Hill</u> in light of the

Supreme Court decision in <u>Perry</u>.  In <u>United States v. Hughes</u>, 562 F. App'x. 393, 398 (6th Cir.

2014), the Sixth Circuit held that the in-court identification procedure—one in which eyewitnesses

to four restaurant robberies identified the defendant as the robber when they were asked whether

the perpetrator of the robbery they saw was present in the courtroom—was not so impermissibly

suggestive as to violate defendant's due process rights.  <u>Id.</u>  This holding overcame the defendant's

argument that the procedure was suggestive, because the only other African–American males in the courtroom during trial were the judge, the two Assistant United States Attorneys, and a United States Marshal. Id. In so ruling, the Sixth Circuit noted the following:

> Further, the Supreme Court has recently made clear that due process rights of defendants identified in the courtroom under suggestive circumstances are generally met through the ordinary protections in trial. Perry v. New Hampshire, – — U.S. ——, 132 S.Ct. 716, 728–29, 181 L.Ed.2d 694 (2013). These protections include the right to confront witnesses; the right to representation of counsel, who may expose flaws in identification testimony on cross-examination and closing argument; the right to jury instructions advising use of care in appraising identification testimony; and the requirement of proof beyond a reasonable doubt.

Id.

The Michigan Court of Appeals in petitioner's case approvingly quoted from the Ninth Circuit's decision in Domina:

> The concern with in-court identification, where there has been suggestive pretrial identification, is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pretrial identification. Because the jurors are not present to observe the pretrial identification, they are not able to observe the witness making that initial identification. The certainty or hesitation of the witness when making the identification, the witness's facial expressions, voice inflection, body language, and the other normal observations one makes in everyday life when judging the reliability of a person's statements, are not available to the jury during this pretrial proceeding. There is a danger that the identification in court may only be a confirmation of the earlier identification, with much greater certainty expressed in court than initially.
>
> When the initial identification is in court, there are different considerations. The jury can observe the witness during the identification process and is able to evaluate the reliability of the initial identification.

Anderson, 2017 WL 4699734, at * 4 (quoting Domina, 784 F.2d at 1368).

The Michigan Court of Appeals further observed the following:

> The Ninth Circuit acknowledged that "there can be little doubt that the initial in-court identification is suggestive," but it also stated that defense counsel has the ability to cross-examine the witness and "argue in summation as to factors causing doubts as to the accuracy of the identification—including reference to both any

suggestibility in the identification procedure and any countervailing testimony such
as alibi."

People v. Anderson, 2017 WL 4699734, at * 4 (quoting Domina, 784 F.2d at 1368–1369 (internal

marks, citations, and footnote omitted).

In the absence of any Supreme Court caselaw extending Neil to in-court identifications, or

any Michigan law to the same effect, Petitioner is unable to establish that Ms. Linden's in-court

identification could have been suppressed for being unduly suggestive.  "A trial counsel's failure

to move to suppress an allegedly unreliable, in-court identification is not ineffective assistance,

absent a reasonable probability that the suppression motion would have resulted in a decision to

exclude the testimony."  Johnson v. Warren, 344 F. Supp. 2d 1081, 1091 (E.D. Mich. 2004).  In

light of the fact that petitioner has failed to show that the in-court identification procedure was

unduly suggestive, he has failed to show that his lawyer was ineffective for failing to move for

suppression of Ms. Linden's identification.  See Perkins v. McKee, 411 F. App'x 822, 833 (6th

Cir. 2011).  Petitioner is not entitled to relief on his third claim.

As part of his fourth claim, petitioner argues that trial counsel "was ineffective for failing

to object to ATF Agent Stan Brue's expert testimony that the change of a cell phone calling pattern

[which occurred] after the time of the robbery and home invasion was very important and could

help the police determine the culpability of the phone user."  Anderson, 2017 WL 4699734, at *2.

Agent Brue offered his opinion that, based on the change in calling pattern after the commission

of the crime and his training and experience, "the user was certainly involved—possibly involved

. . . " in the commission of the crime.  Id.  Petitioner argues this evidence was scientifically

unreliable and Agent Brue was not qualified to give an expert opinion on this issue.

The Michigan Court of Appeals agreed that counsel should have objected to Agent Brue's

testimony but found that petitioner was not prejudiced by this failure.  Id.  Although agreeing that

13

Agent Brue's was inadmissible because it was not the product of reliable principles or methods, id. at *2-3, the Michigan Court of Appeals concluded in the following passage that Petitioner was not prejudiced by counsel's failure to object, in light of the overwhelming evidence of guilt:

> Nonetheless, defendant is not entitled to a new trial because he cannot show with a reasonable probability that his counsel's deficient performance affected the outcome of the trial. Baltimore testified at trial that defendant was the man who entered her house, and another eyewitness, Laura Linden, testified that she was 95% sure that defendant was the man she saw in Baltimore's driveway. Josephus testified that he drove defendant to Baltimore's house and that he saw defendant enter the house. Defendant does not claim that Brue's testimony regarding the use of the cell phone, i.e., that the cell phone was regularly used before 3:03 p.m. and that after 3:03 p.m. and for the rest of the day it only received incoming, short phone calls, was improper. Based on this testimony, even without Agent Brue's testimony that a change in a calling pattern after the crime indicates that the user was involved in the crime, the prosecutor could have argued that the cell phone records, which indicated that defendant actively used the cell phone until 3:03 p.m. and did not use the cell phone around the time the crimes were committed and immediately thereafter, supported that defendant was involved in the crimes. There is no reasonable probability that, but for defense counsel's failure to get Agent Brue's testimony excluded, the result of defendant's trial would have been different.

Id. (internal citation omitted).

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. Even if counsel should have objected to Agent Brue's testimony as being inadmissible, petitioner was not prejudiced by counsel's failure to do so, because the improperly admitted opinion testimony "was not so prejudicial that it defaulted the case to the state." See United States v. Dado, 759 F.3d 550, 566 (6th Cir. 2014). Petitioner would not be entitled to habeas relief on his ineffective assistance of counsel claim. Id.

Petitioner in his fifth claim argues that defense counsel was ineffective for failing to obtain an expert who was could provide exculpatory evidence by determining petitioner's location at the time of the robbery and home invasion based upon the GPS data provided in the Sprint phone records. Petitioner notes in his habeas petition that the trial judge told his first attorney, David

Clark, about an expert named Larry Dalman who was capable of translating GPS coordinates onto

a map.  Pet. at PageID.64.  Although the trial judge did give Mr. Dalman's name to petitioner's

first attorney, 1/27/15 Pretrial Hrg. Tr. at PageID. 278 (Dkt. 9-7), the record is silent as to whether

any of petitioner's lawyers consulted with Mr. Dalman.  Petitioner raised his ineffective assistance

of counsel claim in the pro se supplemental brief on appeal that he filed in addition to the appeal

filed by appellate counsel but did not include any affidavit from Mr. Dalman, nor has he provided

this Court with an affidavit from Mr. Dalman concerning his proposed testimony or willingness to

testify.[2]

> The Michigan Court of Appeals rejected petitioner's claim:
>
> Defendant claims that defense counsel was ineffective for failing to obtain an expert
> who was capable of determining his location at the time of the crimes based on the
> GPS data provided in the Sprint phone records.  The testimony of Detective Gary
> Schuette and Agent Brue indicated that Detective Schuette gave Agent Brue all the
> phone records that he received from Sprint, and Agent Brue testified that there was
> no GPS information in the records.  Nothing in the record indicates that any expert,
> upon looking at the Sprint phone records, could have determined defendant's
> precise location at the time of the crimes.  Accordingly, it is not apparent from the
> record that defense counsel's failure to call an expert capable of determining
> defendant's location at the time of the crimes using GPS data provided in the phone
> records fell below an objective standard of reasonableness.

People v. Anderson, 2017 WL 4699734, at * 9.

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert

witness cannot be based on speculation.  See Keith v. Mitchell, 455 F.3d 662, 672 (6th Cir. 2006).

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do

---

[2] See Defendant-Appellant's Supplemental Standard 4 Brief at PageID.1461-1525 (Dkt. 9-23),
Page.ID 1526-1623 (Dkt 9-24).  Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004),
"explicitly provides that a pro se brief may be filed within 84 days of the filing of the brief by the
appellant's counsel, and may be filed with accompanying motions."  Ware v. Harry, 636 F. Supp.
2d 574, 594, n.6 (E.D. Mich. 2008).

not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998). Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Mr. Dalman or any other expert would have been able to testify and what the content of their testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. See Clark v. Waller, 490 F. 3d 551, 557 (6th Cir. 2007). Petitioner is not entitled to relief on his fifth claim.

## B.  The Perjury Claim (Claim 2)

Petitioner next claims that he is entitled to relief because the prosecutor presented perjured testimony from petitioner's brother and co-defendant Josephus Anderson, who subsequently recanted his trial testimony at a post-trial hearing.

At a post-trial hearing, Josephus Anderson recanted his trial testimony and claimed that he lied about petitioner being involved in the crime. Josephus Anderson claimed that he and Ray Page committed the offense.

The Michigan Court of Appeals rejected petitioner's claim in the following passage:

Recantation testimony is generally regarded as suspect and untrustworthy. Nonetheless, one aspect of Josephus's testimony at the evidentiary hearing gave credibility to his recantation testimony. Josephus testified that prison had been "hell on earth" for him. Yet, despite his experience in prison and knowing that his testimony at the evidentiary hearing could send him back to prison, Josephus testified that he perjured himself at defendant's trial. However, we must give due regard to the trial court's opportunity to appraise the credibility of Josephus. The trial court, which heard Josephus testify at trial and at the evidentiary hearing, believed that Josephus told the truth at trial, not at the evidentiary hearing.

Josephus's recantation testimony at the evidentiary hearing contradicted testimony given at trial. Baltimore testified that she had seen Josephus in court when she attended his court proceedings. She was sure that Josephus was not the man who entered her house. Baltimore had no doubt that defendant was the man who entered her house and pointed a gun at her. Additionally, Linden, who was on her porch when the tan Buick arrived at and left Baltimore's house, testified that the man who

16

got out of the passenger seat got back into the passenger seat when he returned to the car.  Linden also testified defendant was "[v]ery, very similar" to the man she saw.  Furthermore, evidence that the man in the passenger seat jumped out of the tan Buick on Chittock Avenue, which was only one street over from Maple Avenue where defendant lived, supported that defendant was the man in the tan Buick with Josephus.

Defendant argues that Josephus's recantation testimony makes a different result probable on retrial, in part, because the recantation testimony is supported by the paperwork found in the pocket of a coat, which was found in the tan Buick, and by Wilson's testimony.  The paperwork indicated that Rashad Page was a defendant in a landlord-tenant judgment.  However, nothing in the record indicates that Ray and Rashad are the same person.  Indeed, Josephus testified at trial that Ray had a brother named Rashad.  Regarding Wilson's testimony, Wilson did not testify at trial.  We find persuasive caselaw from other states indicating that a trial court, in determining whether newly discovered evidence entitles a defendant to a new trial, should consider the newly discovered evidence in conjunction with the evidence presented at trial.  Accordingly, we will not consider Wilson's testimony when assessing whether Josephus's recantation testimony would make a different result probable on retrial.

The trial court did not abuse its discretion by denying defendant's motion for a new trial on the basis of newly discovered evidence.  Considering the trial court's credibility finding, along with evidence from trial that contradicted Josephus's testimony at the evidentiary hearing and supported that defendant was the person who committed the robbery with Josephus, the trial court did not abuse its discretion by concluding that Josephus's recantation testimony would not make a different result probable on retrial.

Anderson, 2017 WL 4699734, at * 7 (internal citations and footnote omitted).

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice.  Giglio v. United States, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected.  Napue v. People of State of Ill., 360 U.S. 264, 269 (1959) (internal citations omitted).  To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false.  Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998).

Petitioner's perjury claim fails for several reasons.

First, the trial judge rejected Josephus Anderson's recantation, finding his trial testimony to have been more credible than the testimony that he gave at the post-trial hearing.

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence.  Bailey v. Mitchell, 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1).  A state court's factual determination that a prosecution witness' recantation and supporting affidavit is not credible is entitled to the presumption of correctness in a federal habeas proceeding.  See Richardson v. Lord, 7 F. App'x 1, 2 (2nd Cir. 2001); See also Poe v. Rapelje, 5:12–CV–11390; 2014 WL 4715460, at *2 (E.D. Mich. Sept. 22, 2014).

A long-delayed affidavit like Josephus Anderson's that seeks to exonerate a criminal defendant and shift the blame for the crime to another person is "treated with a fair degree of skepticism." Herrera v. Collins, 506 U.S. 390, 423 (1993).  Recanting affidavits and witnesses are viewed with "extreme suspicion."  United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir. 1991); superseded in part on other grounds by U.S.S.G. § 2D1.5(a); see also Byrd v. Collins, 209 F.3d 486, 508, n.16 (6th Cir. 2000).  In addition, "the skepticism with which a court examines such an affidavit is only heightened when the recanting witness is a family member and the witness may have feelings of guilt or may be influenced by family members seeking to change the witness's story." U.S. v. Coker, 23 F. App'x 411, 412 (6th Cir. 2001).  Furthermore, in determining whether a habeas petitioner has satisfied the miscarriage of justice standard so as to be permitted to file a successive habeas petition, a federal court "may consider how the timing of the submission and

the likely credibility of the affiants bear on the probable reliability of that evidence."  Schlup v.

Delo, 513 U.S. 298, 332 (1995).

In the present case, petitioner has failed to present any evidence to rebut the state trial

court's factual findings that the recanting testimony of petitioner's brother was not credible, so as

to support petitioner's perjury claim or to entitle him to a new trial. Josephus Anderson's

recantation is suspect in light of the fact that his trial testimony that petitioner was involved in the

robbery was consistent with other evidence and testimony presented in the case, while his

recantation was inconsistent with such evidence.  See e.g., Allen v. Woodford, 395 F.3d 979, 994

(9th Cir. 2005) (noting that uncorroborated recantation is "even more unreliable" where trial

testimony was consistent with other evidence and recantation was not).

Petitioner's claim also fails because Josephus Anderson's recantation is insufficient to

establish that the prosecutor knew or should have known that Josephus Anderson was testifying

falsely at petitioner's trial, so as to establish that the prosecution knowingly used perjured

testimony at the trial.  See Foley v. Parker, 488 F.3d 377, 391–392 (6th Cir. 2007); see also Monroe

v. Smith, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001), aff'd, 41 F. App'x 730 (6th Cir. 2002) ("the

presentation of a witness who recants or contradicts his or her prior testimony is not to be confused

with eliciting perjury").  Petitioner would not be entitled to habeas relief on his perjury claim,

because he failed to show that the prosecutor knew that his brother testified falsely at petitioner's

trial.  See Rosencrantz v. Lafler, 568 F.3d 577, 587 (6th Cir. 2009).

**C.  The Expert Testimony Claim (Claim 4)**

Petitioner in his fourth claim argues that the judge erred in permitting Agent Brue to offer

opinion testimony that the change of a cell phone calling pattern which occurred after the time of

the robbery and home invasion was very important and could help the police determine the culpability of the phone user.[3]

Respondent argues that this claim is unexhausted, first, because petitioner raised it only for the first time before the Michigan Supreme Court, and secondly, because he failed to raise the claim as a federal constitutional issue.

A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. Granberry v. Greer, 481 U.S. 129, 131 (1987). An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. Prather v. Rees, 822 F.2d 1418, 1422 (6th Cir. 1987); see also 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies). A federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. See Cain v. Redman, 947 F.2d 817, 820 (6th Cir. 1991). Assuming that petitioner's claim is unexhausted, he would not be entitled to habeas relief. The Court will address the merits of the claim.

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. See Keller v. Larkins, 251 F.3d 408, 419 (3rd Cir. 2001). Thus, a federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent which shows that the admission of that expert witness's

---

[3] Petitioner's fourth claim appears to argue both that the admission of Brue's testimony violated his constitutional rights, addressed in this section, and that his attorney's failure to object to the admission of the testimony violated his right to counsel, addressed above.

testimony on a particular subject violates the federal constitution.  See Wilson v. Parker, 515 F.3d 682, 705-706 (6th Cir. 2008).  Petitioner's claim is non-cognizable.

Assuming that it was error to admit Agent Brue's testimony, any error was harmless.

On direct review of a conviction, a constitutional error is considered harmless only if the reviewing court finds it was harmless beyond a reasonable doubt.  Chapman v. California, 386 U.S. 18, 24 (1967)).  However, in Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

"The prejudice prong of the ineffective assistance analysis subsumes the Brecht harmless-error review."  Hall v. Vasbinder, 563 F.3d 222, 236 (6th Cir. 2009).  Having found that petitioner was not prejudiced by counsel's failure to object to Agent Brue's testimony, in light of the other significant evidence of petitioner's guilt, this Court likewise finds that the admission of this testimony was harmless error at most.  Petitioner is not entitled to relief on his fourth claim.

## IV. CERTIFICATE OF APPEALABILITY AND LEAVE TO FILE IN FORMA PAUPERIS

Before petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists

21

could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule Governing § 2254 Cases 11(a), 28 U.S.C. foll. § 2254; see also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court concludes that petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(3)(A). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

## V. CONCLUSION

For the reasons stated above, Anderson's petition for writ of habeas corpus is denied.

Petitioner is further denied a certificate of appealability; however, he is granted leave to file an

appeal in forma pauperis.

SO ORDERED.

Dated:  November 5, 2020                           s/Mark A. Goldsmith
        Detroit, Michigan                            MARK A. GOLDSMITH
                                     United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 5, 2020.

                                 s/Karri Sandusky
                                 Case Manager